IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL SERGE, | : | 1:10-cv-1152 |
| | : | |
| Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | Hon. Martin C. Carlson |
| SUPERINTENDENT, SCI-ALBION, | : | |
| *et al.*, | : | |
| Defendant. | : | |

## MEMORANDUM

**August 29, 2012**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Martin C. Carlson, (doc. 20), filed on June 1, 2012, which recommends that we: (1) deny the Petitioner Michael Serge's ("Petitioner" or "Serge") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the merits, and (2) not issue a certificate of appealability.

Petitioner filed objections to the R&R on June 14, 2012, (doc. 23), and Respondents the Superintendent of State Correctional Institution ("SCI") -Albion, the Pennsylvania Attorney General, and the District Attorney of Lackawanna County, Pennsylvania ("Respondents") filed an answer to Petitioner's objections on June 20, 2012.  (Doc. 27).  Accordingly, this matter is ripe for disposition.  For

the reasons that follow, we shall overrule the Plaintiff's objections and adopt the R&R in its entirety.

## I.   STANDARDS OF REVIEW

### A.   Review of Magistrate Judge's R&R

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made.  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.  *Id.*  Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations.  *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

### B.   Habeas Petitions

As Magistrate Judge Carlson noted in his R&R, federal court may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

2

2254(a).  In *Reed v. Farley*, the Supreme Court recognized that by limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," section 2254 places a high threshold on the court, and such relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or which was completely inconsistent with rudimentary demands of procedure.  512 U.S. 339, 354 (1994).

However, the Third Circuit has highlighted that when making this determination, a federal court is "not mandated to retry the case and substitute its own verdict."  *Lambert v. Blackwell*, 387 F.3d 210, 218 (3d Cir. 2004).  Furthermore, state court factual decisions are "entitled to deference" and the habeas corpus petition will not be granted as long as the state proceedings were "well-supported[,] . . . fair . . . [and] not infected by material error or injustice."  *Id.*  The United States Supreme Court has recently recognized that:

> "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." . . . on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Coleman v. Johnson*, 2012 WL 1912196 (U.S. May 29, 2012) (internal citations omitted). In addition, the Third Circuit has emphasized the significant nature of a state error required to grant a petition for habeas corpus concerning a state determination that is contrary to federal law:

> A state-court decision is "contrary to" clearly established federal law if the state court (1) "contradicts the governing law set forth in [the Supreme] Court's cases" or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result." A state-court decision "involve[s] an unreasonable application" of clearly established federal law if the state court (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case"; or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."

*Lambert*, 387 F.3d at 234 (internal citations omitted).

Finally, when reviewing a petition for challenges to factual determinations, "[s]ection 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or unreasonable given [the evidence relied upon by the state court]." *Id*. at 235. Section 2254(e)(1) provides that "a determination of a factual issue made by a state court shall be presumed to be correct" and a petitioner must rebut "the presumption of correctness by clear and convincing evidence." § 2254(e)(1). In commenting on the interplay between these two sections, the *Lambert* court stated:

> [T]he language of § 2254(d)(2) and § 2254(e)(1) implies an important distinction: § 2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the "evidence presented in the state-court proceeding," while § 2254(e)(1) contemplates a challenge to the state court's individual factual determinations, including a challenge based wholly or in part on evidence outside the state trial record.

*Lambert*, 387 F.3d at 235 (internal citations omitted).  Still, notwithstanding the substantial deference afforded the factual findings of state courts, a federal court can disagree if it concludes that "the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence."  *Miller-El v. Cockrell*, 537 U.S. 322, 339-40 (2003).

### C.    State Court Evidentiary Rulings

Similarly, a federal court's review of whether a state court properly admitted evidence in accordance with its own laws "is no part of a federal court's habeas review of a state conviction."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Moreover, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Id*.  The Third Circuit has recognized that deference to a state court's evidentiary ruling is particularly appropriate given the substantial discretion states possess to establish rules of evidence applicable to their criminal proceedings.  *Lesko v. Owens*, 881 F.2d 44, 51 (3d Cir. 1989).  Consequently, "evidentiary errors of state courts are not considered to be of constitutional proportion unless the error deprives a defendant of fundamental

fairness in his criminal trial." *Bisaccia v. Attorney Gen. of State of N.J.*, 623 F.2d

307, 312 (3d Cir. 1980). Additionally, even if a trial court's admission of evidence

was erroneous to the level of offending the Constitutional guarantees of due

process, such evidence must have had a "substantial and injurious effect or

influence in determining the jury's verdict" to justify habeas relief. *Kontakis v.*

*Beyer*, 19 F.3d 110, 120 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637

(1993)).

## II.    DISCUSSION

### A.    FACTUAL BACKGROUND

The facts and procedural history of this case are well known to the parties

and the Court, thus we shall only briefly summarize them herein.[1] Petitioner is a

state prisoner incarcerated at SCI at Albion serving a life sentence for first degree

murder. (Doc. 1 ¶ 1). On January 15, 2001, Petitioner was arrested and charged

with the shooting death of his wife, Jennifer Serge, at the couples' home in

Lackawanna County. (*Id*. ¶ 2). His charges were filed in an amended criminal

complaint charging him with first-degree murder under 18 Pa.C.S. § 2502(a), and

third-degree murder under 18 Pa.C.S. § 2502(c). At Petitioner's February 2002

---

[1] Magistrate Judge Carlson undertakes an appropriate review of the factual background and procedural history of this matter at pages 2-6 of the R&R.

jury trial, he raised two alternative defenses, first, that his wife attempted to kill

him with a knife, and alternatively, that he was voluntarily intoxicated at the time

of the altercation, which should consequently reduce his first-degree charge to a

third-degree charge.  (*Id.* ¶¶ 3-4).

         To counter these arguments, the Commonwealth filed a motion *in limine*

seeking to introduce a computer-generated animation ("CGA") presenting a visual

portrayal of its theory of the crime.  (*Id.* ¶ 5).  Petitioner notes that a CGA is a

"drawing or drawings created by a computer that, when assembled frame-by-

frame, produce the image of a motion.  This image is a graphic representation

depicting the previously formed opinion of a witness or witnesses."  (*Id.*).

Lackawanna Common Pleas Judge Terrence Nealon granted the Commonwealth's

motion and permitted its introduction provided it was properly authenticated "as a

fair and accurate depiction of its experts' reconstruction of the relevant crime" and

did not "include any inflammatory features which may cause unfair prejudice."

(*Id.* ¶ 6); *Commonwealth v. Serge*, 58 Pa.D. & C. 4th 52, 54 (2001).  At trial, the

Commonwealth introduced the CGA on the basis of the testimony provided by two

of its expert witnesses, Dr. Gary Ross, a forensic pathologist, and Trooper Brad

Beach, a crime scene reconstructionist.  (*Id.* ¶ 24).  The testimony of the two

experts advanced the theory that "the victim was shot multiple times, first in the

back and then through the heart as she knelt on the floor, and then her body was moved next to a knife placed on the floor." (*Id.*; Doc. 18 at 3). On the basis of this theory, the jury convicted Serge of first-degree murder and Judge Nealon sentenced him to a mandatory term of life imprisonment. (*Id.* ¶ 7).

On direct appeal to the Pennsylvania Superior Court, that court affirmed the judgment of sentence after reviewing the expert qualifications of Trooper Beach, the admission of the CGA at trial, and the jury instructions challenged in his petition for habeas corpus relief. (*Id.* ¶ 8); *see Commonwealth v. Serge*, 837 A.2d 1255 (Pa. Super Ct. 2003). He subsequently filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which granted his appeal as to the issue of whether the trial judge properly admitted the CGA as demonstrative evidence supporting the Commonwealth's theory. (*Id.* ¶ 9). The Pennsylvania Supreme Court, in a matter of first impression in Pennsylvania, held that the use of the CGA was admissible as demonstrative evidence provided certain conditions were satisfied. (*Id.* ¶ 10). Serge also filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on October 2, 2006. (*Id.* ¶ 11).

After exhausting his remedies on direct appeal, Petitioner filed a counseled claim under the Post-Conviction Relief Act ("PCRA"). (*Id.* ¶ 13). His PCRA petition was denied, and his subsequent appeal of that decision was denied by the

Pennsylvania Superior Court on December 24, 2009.  (*Id.* ¶¶ 14-15).  Thereafter,

Serge filed the instant petition for habeas corpus relief.  At the outset, the

Commonwealth sought to dismiss this petition by arguing that Serge had failed to

fully litigate his claims in state court.  As to this issue, we found that Petitioner had

exhausted six of the ten claims, identified as claims A, B, C, D, F, and I.

Specifically, we concluded that A, B, C, and D had been properly raised in Serge's

direct appeal, and grounds F and I had been litigated in his PCRA proceedings.

We further found that these six claims had presented a federal claim to state courts,

(doc. 14 at 8-16), whereas the claims in E, G, H and J were not exhausted under 28

U.S.C. § 2254.  (*Id.* at 16-19).  Therefore, the claims identified in A, B, C, D, F and

I, which were permitted to proceed, form the basis for the R&R.

## B.    RECOMMENDATION

Within the R&R, Magistrate Judge Carlson recommended dismissing

Petitioner's request based on the following conclusions: (1) his claim that the trial

court's admission of the CGA violated his right to a fair trial failed on the merits;

(2) his allegations that Trooper Beach was not properly qualified to serve as an

expert failed on the merits; (3) his challenge to the jury instructions regarding self-

defense and voluntary manslaughter failed on the merits; and (4) his allegations of

ineffective assistance of counsel failed on the merits.  (Doc. 20).

9

### C.     OBJECTIONS TO THE R&R

Petitioner's objections to the R&R claim that the Magistrate Judge erred as to the following.

### 1.     The Admission of the CGA

Petitioner claims that the CGA introduced at trial was not properly authenticated, it was irrelevant, and it was unfairly prejudicial.  (Doc. 23 at 1).  In challenging authentication of the CGA, Serge argues that neither the record nor the expert opinions rendered by Dr. Ross or Trooper Beach support the depictions in the CGA, including (1) depicting the victim as kneeling during one of the gun shots; (2) placing the victim's left arm on the floor during the second shot; (3) the position of the Petitioner; (4) the two-handed grip on the gun by the Petitioner; (5) the combat-style crouch of Petitioner; and (6) the appearance of a knife in the final scene of the CGA.  (*Id*. at 5-6).

Petitioner also contends that Trooper Beach lacked the requisite qualifications to testify because he was not on the crime scene when the body was there, he did not attend the autopsy, and he changed his measurements two or more times.  (*Id*. at 6).  Petitioner also asserts that Dr. Ross was unable to testify within a reasonable degree of forensic pathologist certainty that the victim would have collapsed on her knees to the floor following the first shot based on a bruise to her

left cheek. (*Id*.). Serge further maintains that no evidence or opinions supported the knife in the final scene, and thus it was improper to insert it into the CGA. (*Id*. at 7). Petitioner also claims that because up to four versions of the CGA were produced, the prosecution lacks a basis in fact for the version that was played for the jury. Citing McCormick on Evidence, he claims that the danger associated with the CGA stems from the fact that "the jury may confuse art with reality" and that "impressions generated by the evidence may prove particularly difficult to limit." (*Id*. at 8 (citing 2 MCCORMICK ON EVIDENCE § 19 (5th ed. 1999))). Thus, he contends that the CGA was prejudicial because it lacked the necessary authentication and relevance. (*Id*. at 9 (citing *State v. Denton*, 768 N.W.2d 250, 254-61 (Wis. Ct. App. 2009))).

We do not find that any of Petitioner's objections to admission of the CGA are persuasive. As the Magistrate Judge highlighted, Petitioner has fully and completely litigated this issue at every level of the Pennsylvania court system. (Doc. 20 at 12 (citing *Commonwealth v. Serge*, 58 Pa. D. & C. 4th 52 (2001); *Commonwealth v. Serge*, 837 A.2d 1255 (Pa. Super. Ct. 2003); *Commonwealth v. Serge*, 896 A.2d 1170 (Pa. 2006))). Furthermore, after finding that the animation did not depict any inflammatory characteristics that could improperly influence the jury, the CGA was admitted only after providing an extensive limiting instruction

to the jury.  (Doc. 20 at 12 (citing *Commonwealth v. Serge*, 58 Pa. D. & C.4th at

83-84)).  In addition, as emphasized in the R&R, "federal habeas corpus relief does

not lie for errors of state law," and this Court's scope of review concerning

Pennsylvania evidentiary rulings is exceedingly narrow.  (Doc. 20 at 13 (citing

*Estelle v. McGuire*, 502 U.S. 62, 67 (1991))).  Notably, both of Pennsylvania's

highest courts, the Pennsylvania Superior Court and the Pennsylvania Supreme

Court, carefully considered this issue and found that under Pennsylvania's Rules of

Evidence, the CGA was properly admitted provided it: "(1) is properly

authenticated . . . as a fair and accurate representation of the evidence it purports to

portray; (2) is relevant . . .; and (3) has a probative value that is not outweighed by

the danger of unfair prejudice."  (*Id*. at 13-14 (citing *Commonwealth v. Serge*, 896

A.2d 1170, 1178 (Pa. 2006))).

    As Magistrate Judge Carlson noted, the alleged deficiencies Petitioner

identifies in the CGA were found by all the Pennsylvania courts that reviewed this

case to fall with the realm of expert testimony and the physical evidence presented

at trial.  (*Id*. at 14).  Specifically, the Pennsylvania Supreme Court found that all of

the alleged fabrications in the CGA "were within the confines of the findings and

suggestions of the expert opinions of both Dr. Ross and Trooper Beach."  (*Id*. at 16

(citing *Serge*, 896 A.2d at 1180)).  Concerning relevancy, both the Superior and

Pennsylvania Supreme Courts concluded that a depiction of opinions from numerous expert witnesses concerning the manner in which a shooting occurs is undoubtedly relevant in allowing a jury to decide whether a theory of self-defense is plausible.  (*Id*. (citing *Serge*, 837 A.2d at 1263; *Serge*, 896 A.2d at 1183)).  Pennsylvania's Supreme Court held that "[t]he CGA was relevant because it clearly, concisely, and accurately depicted the Commonwealth's theory of the case and aided the jury in the comprehension of the collective testimonies of the witnesses without use of extraneous graphics or information."  (*Id*. at 16-17 (citing *Serge*, 896 A.2d 1170, 1182 (Pa. 2006))).  Therefore, we agree with the Magistrate Judge that nothing in the state court ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . ." (*Id*. at 13 (citing 28 U.S.C. § 2254(d)(1))).

In addition, through its pretrial ruling admitting the CGA, the trial court ensured that the scene portrayed in the CGA was done so in a "clinical and emotionless fashion."  (*Id*. at 17 (citing *Serge*, 58 Pa. D. & C.4th at 82)).  For example, the court noted that the CGA contained no "inflammatory content" and that it "emitted no sound and displayed no facial expressions, evocative movements, or evidence of injury such as blood," but merely illustrated the

13

trajectory of three bullets that entered the victim's body and the Commonwealth's theory that the body was moved subsequent to the fatal shots.  (*Id.* at 17-18 (citing *Serge*, 837 A.2d at 1263)).  In commenting on the possibility of the CGA prejudicing the jury, the Pennsylvania Supreme Court appropriately emphasized that "[a]ny prejudice derived from viewing the CGA resulted not from the on-screen depiction of the Commonwealth's theory, but rather was inherent to the reprehensible act of murder."  (*Id.* at 18 (citing *Serge*, 896 A.2d at 1183)).  Thus, a trial court commits a constitutional error only if "the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial."  (*Id.* (citing *Lesko*, 881 F.2d at 51-52)).  As the Magistrate Judge recognized, Serge's allegation that he was deprived of a constitutionally fair trial stemming from admission of the CGA is merely a challenge to Pennsylvania's detailed and comprehensive interpretation of its own rules of evidence, a legal determination federal courts are patently unable to review in this context absent "a decision that was contrary to . . . clearly established Federal law."  (*Id.* at 19 (citing 28 U.S.C. 2254(d)(1))).

Accordingly, we shall overrule Petitioner's objections to the R&R regarding admission of the CGA by the trial court.

### 2.    Qualifications of Trooper Beach

Petitioner next objects to the Magistrate Judge's finding that Trooper Beach was properly qualified as an expert witness. (Doc. 23 at 6). He claims that Trooper Beach, a vehicle-accident reconstructionist, lacked training or experience in crime-scene reconstruction that would qualify him to testify in this capacity. Serge contends that the CGA was improperly admitted because Trooper Beach's crime-scene reconstruction efforts and opinions were used to form the basis of that illustration. (*Id*. at 10). Petitioner argues that contrary to the Magistrate Judge's conclusion, accident reconstruction and ballistic analysis are quite different. (*Id*. at 11). He asserts that under Federal Rule of Evidence 702, Trooper Beach fails the first prong, qualification, because he has no experience in crime scene reconstruction or bullet trajectory analysis. (*Id*. at 12).

Again, we do not find any of Petitioner's objections to the admission of Trooper Beach as an expert witness to be persuasive. As the Magistrate Judge recognized, federal courts may not "run roughshod over the considered findings and judgments of the state courts that conducted that original trial and heard the initial appeals." (Doc. 20 at 20 (citing *Williams v. Taylor*, 529 U.S. 362, 383 (2000))). Furthermore, Trooper Beach has "attended various training sessions related to crime-scene reconstruction, and used his training and experience to perform nine crime scene reconstructions involving homicide, including five

15

shootings, and four more shooting incidents that did not result in a death."  (*Id*. at 21 (citing Doc. 18 at 18-19)).  The Superior Court concluded that Trooper Beach's qualifications, including his experience and training in "forensic investigations and applied physics gave him a reasonable pretension to specialized knowledge" despite the fact that his "primary expertise lay in vehicular collision reconstruction."  (*Id*. at 22 (citing *Serge*, 837 A.2d at 1260)).  The Superior Court also found that any question concerning Trooper Beach's qualifications appropriately went to the weight afforded his testimony by the jury, and not to its threshold admissibility.  (*Id*. (citing *Serge*, 837 A.2d at 1260)).

As the Magistrate Judge concluded, and we agree, federal habeas courts are not given authority "to reexamine state-court determinations on state-law questions."  (*Id*. (citing *Estelle*, 502 U.S. at 67)).  Therefore, as this issue was clearly within the purview of the trial court, and subsequent Pennsylvania state courts to decide in applying state law, we agree with the Magistrate Judge's analysis that there was no deprivation of a constitutional right or an unreasonable application of federal law.  Accordingly, we shall overrule Petitioner's objections as to Trooper Beach's qualifications.

### 3.      Trial Court's Jury Instructions

#### a.      Duty to Retreat Instruction

Petitioner also contends that the trial court's instruction to the jury regarding a duty to retreat from his own home if it determined that he was the initial aggressor was in error and prejudicial.  (Doc. 23 at 13-14).  Specifically, he alleges that the Court's instruction was deficient because there could be no reasonable inference from the evidence that he was the initial aggressor, and thus, that he had a duty to retreat from his own home.  Serge maintains that the trial court's instruction violated his right to due process by instructing the jury on an erroneous self-defense charge and thereby relieved the Commonwealth of its burden to disprove the self-defense claims beyond a reasonable doubt by allowing the jury to conclude that Petitioner had a duty to retreat from his own home if it found that he was the initial aggressor.  (*Id*. at 15-16).

Petitioner notes that in determining whether a jury instruction runs afoul of due process, the ultimate question is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violations the Constitution."  (*Id*. at 16-17 (citing *Estelle*, 502 U.S. at 72)).  As to his self-defense claim, Serge argues that he had the right to have the jury determine the validity of this claim by requiring the Commonwealth to disprove each element beyond a reasonable doubt.  (*Id*. at 17).  He claims that because the Court instructed the jury

17

on the "initial aggressor" exception without sufficient evidence in the record to support such a finding, the jury instruction was erroneous.  (*Id*.).

As the Magistrate Judge appropriately noted, a federal court should not grant a petition for habeas corpus relief based on erroneous jury instructions unless they "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  (Doc. 20 at 24 (citing 28 U.S.C. § 2254(d)(1))).  He also emphasized that a petitioner seeking a writ of habeas corpus based on a constitutional error arising from a jury instruction that quoted state law has an "especially heavy burden."  (*Id*. at 25 (*Henderson v. Kibbe*, 431 U.S. 145, 155 (1977))).  Moreover, while a district court "must focus initially on the specific language challenged," (doc. 20 at 25 (citing *Francis v. Franklin*, 471 U.S. 307, 315 (1985))), the jury instruction at issue "'may not be judged in artificial isolation' but must be considered in the context of the instructions as a whole and the trial record."  (*Id*. (citing *Estelle*, 502 U.S. at 72)).  The Magistrate Judge also highlighted the United States Supreme Court's statement that "[b]ecause it is not enough that there is some 'slight possibility' that the jury misapplied the instruction, the pertinent question 'is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  (*Id*. (citing *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009))).

18

The portion of the jury instructions Petitioner objects to regarding his assertion that he shot his wife in self-defense after she attempted to attack him with a knife, stated as follows:

> [T]he defendant must not have violated any duty to retreat which would have enabled him to avoid the necessity of using such force and would have enabled him to retreat with complete safety.  As a general rule, a defendant has a duty to retreat before resorting to deadly force in self-defense if he knows he can avoid the necessity of using such force with complete safety by retreating.  However, if the encounter takes place in the defendant's own dwelling, he has no duty to retreat from his own home unless he was the initial aggressor.
>
> \*          \*          \*          \*          \*
>
> In sum, you cannot find the defendant guilty of murder unless you are satisfied beyond a reasonable doubt first . . .; or fourth, that the defendant had a duty to retreat and such retreat was possible with complete safety. If you find that any one of these four elements has been established beyond a reasonable doubt, then the defense of justification or justifiable self-defense has not been made out.

(*Id*. at 26 (citing Doc. 1 at 16-17)).  Petitioner contends that because the jury could not have inferred from the evidence that he initiated the altercation which precipitated the fatal shooting, that the trial court's jury instruction was "erroneous and prejudicial" because the jury could not have found that he had a duty to retreat from his own home.  As highlighted by the Magistrate Judge, the Superior Court found that the jury could have concluded that any of the following three scenarios was possible:

> (1) [Serge] was the sole aggressor and staged a self-defense scene after the fact; (2) [he] was the initial aggressor and fatally shot Jennifer Serge after she countered with a knife; (3) Jennifer Serge was the initial aggressor and Appellant countered with his gun. The instruction on the "no duty to retreat from one's dwelling" exception pertains to the third scenario, while the instruction on the "initial aggressor" exception to the exception pertains to the second scenario.

*Serge*, 837 A.2d at 1267, n.11. Moreover, the Superior Court on direct appeal found that:

> [t]he trial court's main instruction adequately and accurately presented the law on use of deadly force in self-defense as found under Section 505, which includes a general duty to retreat, an exception to that general rule when a person is not in his dwelling, and an exception to the exception if the person is the initial aggressor. A jury could have fairly inferred from the evidence that the "initial aggressor" exception to the exception applied, thus substantiating instruction on the duty to retreat.
>
> Nor did the court's subsequent summation confuse or contradict this main instruction; rather, it confirmed that guilt could not be found unless the Commonwealth disproved beyond a reasonable doubt one of the four requirements to a justifiable self-defense defense. Again, one self-defense requirement was that Appellant not have violated a duty to retreat if he were the initial aggressor in his home, and it was for the jury to determine if such a duty arose, and went ignored, under the facts of the case. Accordingly, we find no error with the self-defense instruction.

*Commonwealth v. Serge*, 837 A.2d 1255, 1267 (Pa. Super. Ct. 2003) *aff'd*, 896 A.2d 1170 (2006). Therefore, as emphasized by the Magistrate Judge, the "initial aggressor" exception to the threshold standard that a person does not have a duty to retreat from threats in their own homes, was in fact an integral component of the

20

trial court's self-defense instruction.  Moreover, the jury instructions made explicit that if the Commonwealth demonstrated beyond a reasonable doubt that one of the four elements comprising a viable self-defense claim was missing, the entire defense would fail.[2]  Accordingly, since we do not find that the trial court's jury instructions violated Petitioner's right to due process under the Fourteenth Amendment, we agree with the Magistrate Judge's sound analysis and overrule Petitioner's objections to this extent.

### b.      The Voluntary Manslaughter Instruction

In addition, Petitioner argues that the Magistrate Judge erred in concluding that the trial court correctly refused to instruct the jury on voluntary manslaughter - imperfect self defense.  (Doc. 23 at 17).  He claims that while the Pennsylvania Superior Court has held that "[o]ur jurisprudence has rejected the imperfect self-defense reduction based on voluntary intoxication," his statements to police that he shot his wife in self-defense after she attempted to attack him with a knife, and that a knife was found next to her body, nevertheless demonstrate that the imperfect self-defense charge was warranted.  (*Id*. at 19).  Petitioner asserts that despite his voluntary intoxication defense, the instruction should have been given when he

---

[2] Ultimately, the able trial judge was compelled to contour his instructions to the Petitioner's asserted defense theories.  This was not an easy task under the circumstances, but Judge Nealon performed it adroitly, and without any error.

requested it if "the trial evidence reasonably would support such a verdict." (*Id.*

(citing *Commonwealth v. Patton*, 936 A.2d 1170, 1177 (Pa. Super. Ct. 2007))).

Consequently, he contends that the jury was deprived of determining whether his

unreasonable belief self-defense claim was persuasive, which could have led them

to convict him of voluntary manslaughter instead of first-degree murder. (*Id.* at

20). Additionally, Petitioner argues that whether his belief was reasonable or

unreasonable should have been a question for the jury to resolve. As a result, he

maintains that his due process rights were infringed by the refusal of the trial court

to instruct the jury on voluntary manslaughter. (*Id.* at 22).

   Again, we find that the Magistrate Judge correctly found that the trial court's

refusal to instruct the jury on voluntary manslaughter did not violate due process.

(Doc. 20 at 29). The Superior Court concluded that Serge's argument in favor of a

jury instruction based on his voluntary intoxication defense failed to constitute an

acceptable use for the voluntary manslaughter - imperfect self-defense instruction.

(*Id.* at 30). As the R&R notes, in *Commonwealth v. Patton*, the Pennsylvania

Superior Court held that the subject jury instruction must be requested, must be

based on an offense that has been made an issue in the case, and must be

reasonably supported by the evidence presented at trial. (*Id.* at 31 (citing 936 A.2d

1170, 1177 (Pa. Super. Ct. 2007))). At trial, neither the Commonwealth's theory,

22

nor Serge's theory of the shooting, supported a finding that Petitioner acted on an

unreasonable belief since it would be reasonable for him to act in self-defense if his

theory that his wife was the initial aggressor was believed.  (*Id*.).   Therefore, we

again concur with the Magistrate Judge's conclusion that Petitioner highlighted no

cognizable facts at trial to support his assertion that he acted with an unreasonable

state of mind when shooting his wife.   Accordingly, we do not find that the trial

court's decision not to provide the voluntary manslaughter - imperfect self-defense

instruction violated his due process rights.   Thus, we shall overrule Petitioner's

objections to this extent.

### 4.      Ineffective Assistance of Counsel

Next, Petitioner claims that his trial counsel was ineffective because his

understanding of the written fee agreement required counsel to retain expert

witnesses and present them at trial.  (Doc. 23 at 23).   While he admits that trial

counsel presented a blood spatter expert and a forensic toxicologist to support his

claim that his wife had a knife in her hand when she was shot, and that his blood

alcohol content was between .235% and .325%, he claims that counsel failed to

retrain and present testimony from a ballistics expert and a forensic pathologist to

further corroborate his version of the shooting.  (*Id*. at 23).   Petitioner further

claims that trial counsel's cross examination of Trooper Beach and Dr. Ross was

insufficient to counter their repudiation of Petitioner's version of the shooting. (*Id*. at 27). He emphasizes that a ballistics expert could have effectively countered the CGA and instead supported his version of the shooting.

Additionally, Petitioner argues that his trial counsel was ineffective for failing to request that a formal complaint be filed with the Pennsylvania State Police requesting an internal investigation into the alleged wrongdoing of state troopers and other officers. (*Id*. at 29). He highlights that in his *pro se* petition he alleged that the investigating police destroyed or doctored evidence, that Trooper Robert Stroud and Officer Jared Ganz committed perjury at trial, and that Officer Joseph Zegalia tampered with the jury by arresting a juror for possible DUI which ultimately led to the dismissal of that juror. (*Id*. at 32).

Here again, we find the Magistrate Judge's analysis to be correct. After noting that a petitioner seeking to prevail on an ineffectiveness of counsel claim must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that the petitioner was prejudiced by counsel's errors; the Magistrate Judge highlighted Serge's trial counsel's testimony during the PCRA hearing that he did in fact consult a forensic pathologist, Dr. Isadore Mihalakis, M.D., but declined to call this expert because Dr. Mihalakis did not dispute the autopsy findings of the Commonwealth's forensic pathologist, Dr.

24

Ross.  (Doc. 20 at 36-37).  Thus, as the state courts that reviewed Petitioner's case also found, it was not unreasonable nor prejudicial for Serge's trial counsel not to call Dr. Mihalakis.  (*Id*.).  Moreover, to the extent Petitioner claims that his trial counsel should have presented a different forensic or ballistic expert, he was required to identify the alternative evidence that was available to him.  (*Id*. (citing *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) (A witness cannot be produced out of a hat. [A petitioner] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense.  Rather he must set forth facts to support his contention. [If he fails to do so] he is not entitled to habeas relief on this claim."); *Commonwealth v. Williams*, 640 A.2d 1251, 1265 (Pa. 1994) ("When a defendant claims that some sort of expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence"))).

Here, it is clear that Petitioner has failed to identify, other than in a general and conclusory manner, the witnesses and evidence that should have been introduced at trial that would have convinced the jury to convict him of the lesser homicide charge.  As the Supreme Court has explained, "Federal habeas courts

must guard against the danger of equating unreasonableness under *Strickland* with

unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not

whether counsel's actions were reasonable.  The question is whether there is any

reasonable argument that counsel satisfied *Strickland's* deferential standard."  (*Id*.

at 38 (citing *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011))).

Regarding Petitioner's claim that his trial counsel was ineffective for failing

to request that a formal complaint be filed with the Pennsylvania State Police, we

agree with the Magistrate Judge that this argument is ultimately unavailing.  As the

R&R highlights, Serge's trial counsel unequivocally denied that Petitioner ever

requested that he file such a complaint with the Pennsylvania State Police, and that

even if he had made such a request, counsel would have declined to do so because

such a complaint would have been inappropriate and unhelpful to his defense.  (*Id*.

at 39).  Therefore, we agree that Petitioner's argument concerning his trial

counsel's alleged failure to demand an internal affairs investigation lacks merit.

Even granting Petitioner the benefit of all doubts and assuming he requested that

his trial counsel file such a complaint, the state courts all concluded that it was

reasonable for his counsel to decline such request based on his trial strategy.  (*Id.* at 40).[3]

Accordingly, we agree with the Magistrate Judge's finding that there is no basis upon which to grant Petitioner's ineffective assistance of counsel claim. Therefore, we shall overrule Petitioner's objections to this extent.

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, Plaintiff's objections are overruled and the thorough and cogent R&R prepared by the Magistrate Judge shall be adopted in its entirety.  An appropriate Order shall issue.

---

[3] Indeed, our review comports with the tenor of the state courts' findings, wherein the thoughtful and zealous nature of trial counsel's performance is repeatedly noted.